**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 08-cv-02714-REB

KELLI L. SHOEMAKER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO COMMISSIONER**

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1] filed December 12, 2008, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the decision and remand for further proceedings.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result of a fibromyalgia, chronic fatigue syndrome, chronic Epstein-Barr virus, asthma, eczema, celiac disease, multiple sclerosis, depression, and chronic back pain. After her application for disability insurance benefits was denied initially, plaintiff requested a hearing before an administrative law judge. That hearing was held on December 6, 2007. At the time of

the hearing, plaintiff was 46 years old.  She has a high school education and a two-year respiratory technician's degree and past work experience as a respiratory therapist, dental assistant, teacher's aide, and education paraprofessional.  Plaintiff had not engaged in substantial gainful activity since her alleged date of onset, January 25, 2004.

The ALJ found that plaintiff was not disabled and, therefore, not entitled to disability insurance benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of such impairments did not meet or equal any presumptively disabling impairment listed in the social security regulations.  Other alleged impairments, including fibromyalgia, were found to be non-severe.  The ALJ determined that plaintiff had the residual functional capacity for light work with certain postural and environmental limitations and the ability to handle simple, routine, repetitive jobs and tolerate only occasional contact with the public, co-workers, and supervisors.  Although this finding precluded plaintiff's past relevant work, the ALJ found that there were alternate jobs existing in significant numbers in the national economy that she could perform.  He, therefore, found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous

work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the

> claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. **Id.** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of

substantial evidence." **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. **Id.**

### III. LEGAL ANALYSIS

Although represented by counsel at the administrative level, plaintiff brings this appeal *pro se*. Although her arguments, therefore, are not neatly categorized into legal issues invoking the Commissioner's regulations and apposite caselaw, I nevertheless perceive at least four separate issues implicated by her brief: (1) that she received ineffective assistance of counsel at the administrative level; (2) that the ALJ erred in rejecting the opinions of her treating physicians; (3) that the ALJ's decision is not supported by substantial evidence; and (4) that the ALJ erred in assessing her credibility. I pretermit consideration of the first of these arguments,[1] but find that the remaining three have purchase and dictate a remand for further proceedings.[2]

Among her many physical and psychological impairments, plaintiff suffers from fibromyalgia, "a rheumatic disease that causes inflammation of the fibrous connective

---

[1] " There is no constitutional or statutory right to competent counsel in Social Security proceedings." **Banta v. Chater**, 1996 WL 477298 at *1 (10th Cir. Aug. 22,1996); *accord* **Johnson v. Barnhart**, 2005 WL 2993933 at *3 (S.D.N.Y. Oct. 7, 2005); **Bovino v. Commissioner of Social Security**, 1998 WL 812596 at *4 (E.D.N.Y. Apr. 8, 1998). Accordingly, allegations of ineffective assistance of counsel at the administrative level will not warrant remand unless there has been a showing of clear prejudice or unfairness. **Banta**, 1996 WL 477298 at *1 (citing **Jeralds v. Richardson**, 445 F.2d 36, 39 (7th Cir. 1971)). Although it certainly is arguable that counsel's alleged failure to ensure that treating source records were put before the ALJ constituted a due process violation, it is also true that the ALJ bore responsibility for ensuring completeness of the record, as discussed in more depth *infra*. Because the ALJ's violation of his duty clearly requires remand, I do not find it necessary to address the ineffective assistance of counsel argument.

[2] Plaintiff does not request a directed award of benefits, and I would find it inappropriate to exercise my discretion in that regard in any event. **See Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993).

tissue components of muscles, tendons, ligaments and other tissue and results in long-term but variable levels of muscle and joint pain, stiffness and fatigue. Its cause or causes are unknown, [and] there is no cure." ***Sanchez v. Astrue***, – F.Supp.2d –, 2009 WL 4810696 at *3 n.3 (D. Colo. Dec. 10, 2009) (Blackburn, J.) (citations and internal quotation marks omitted; alterations in original). The ALJ noted references in plaintiff's medical records to fibromyalgia as far back as 2003, but found that impairment to be non-severe at step two of the sequential evaluation because "[n]o formal trigger point analysis is present in [plaintiff's] medical records" and because "[m]any times, [plaintiff's] examination notes indicate normal joints and range of motion." (Tr. 23.)³ The first of these findings is belied by the evidence. The second, while true, misconstrues the nature of a fibromyalgia diagnosis.

Contrary to the ALJ's assertion that no formal tender point⁴ analysis had ever been conducted to establish the existence of plaintiff's fibromyalgia, plaintiff's treating physician, Dr. Leslie A. Leppla, completed a Fibromyalgia Residual Functional Questionnaire addressing this very issue. (Tr. 524-528.)⁵ More specifically, Dr. Leppla

---

³ At step two of the sequential evaluation process, the ALJ must determine which of the claimant's alleged impairments, if any, are "severe." 20 C.F.R. § 404.1521. An impairment is not considered severe if it is merely a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." **Social Security Ruling 85-28**, 1985 WL 56856 at *3 (SSA 1985). Although plaintiff bears the burden of proof as to this issue, her burden in this regard is "*de minimis*." **Hawkins v. Chater**, 113 F.3d 1162, 1169 (10th Cir. 1997).

⁴ The ALJ used the term "trigger points" (Tr. 23), but the correct term is "tender points." ***See Lamanna v. Special Agents Mutual Benefits Association***, 546 F.Supp.2d 261, 269 n.6 (W.D. Pa. 2008) (noting that "tender points" of fibromyalgia "are distinct from 'trigger points' seen in other pain syndromes").

⁵ Fibromyalgia is typically diagnosed by reference to "character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." ***Sarchet v. Chater***, 78 F.3d 305, 306 -307 (7th Cir. 1996). ***See also*** Carol & Richard Eustice, *What Are*

noted that plaintiff had bilateral pain in the shoulders, arms, neck, hips, and knees, as well as in her chest and cervical, thoracic, and lumbosacral spine (Tr. 525), which appear to correspond to the "tender points" indicative of fibromyalgia, ***Lamanna v. Special Agents Mutual Benefits Association***, 546 F.Supp.2d 261, 269 n.6 (W.D. Pa. 2008) (describing tender points as located "on the back of the neck, shoulders, chest, ribcage, lower back, buttocks, thighs, knees, and elbows"). Dr. Leppla also noted that plaintiff had many of the other complaints commonly associated with fibromyalgia. (Tr. 524-525.) ***See Lamanna***, 546 F.Supp.2d at 269 n.6 (noting that fibromyalgia "has been linked to fatigue, morning stiffness, sleep problems, headaches, numbness in hands and feet, depression, and anxiety"). Although the ALJ received this report at the hearing and addressed it elsewhere in his opinion, it is not clear why he failed to recognize the potential significance of Dr. Leppla's conclusions or reference them in making his step two determination. In any event, his failure to do so constitutes reversible error.

Moreover, the ALJ's reliance on the lack of objective medical evidence to conclude that plaintiff's fibromyalgia was not severe patently misunderstands the very nature of this impairment. As the Tenth Circuit has recognized, "[t]here are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender

---

*Fibromyalgia Tender Points?* (updated March 9, 2007) (available at http://arthritis.about.com/od/fibromyalgia/g/tenderpoints.htm) (last accessed February 23, 2010) (noting the nine, bilateral muscle locations of tender points indicative of fibromyalgia).

spots[.]" ***Gilbert v. Astrue***, 2007 WL 1068104 at *4 (10th Cir. April 11, 2007) (quoting ***Sarchet v. Chater***, 78 F.3d 305, 306 (7th Cir. 1996)).  More to the point, "its symptoms are entirely subjective." ***Id.*** (quoting ***Sarchet***, 78 F.3d at 306).  ***See also Rogers v. Commissioner of Social Security***, 486 F.3d 234, 243 (6th Cir. 2007) ("[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs.").  Thus, fibromyalgia "is diagnosed entirely on the basis of patients' reports and other symptoms." ***Benecke v. Barnhart***, 379 F.3d 587, 590 (9th Cir. 2004).  ***See also Green-Younger v. Barnhart***, 335 F.3d 99, 107 (2nd Cir. 2003) (noting that "a patient's report of complaints, or history, is an essential diagnostic tool" in fibromyalgia cases).

Accordingly, minimal objective medical findings are *typical* in fibromyalgia cases. For example, persons suffering from fibromyalgia often "manifest normal muscle strength and neurological reactions and have a full range of motion." ***Preston v. Secretary of Health and Human Services***, 854 F.2d 815, 820 (6th Cir. 1988).  The ALJ noted and relied on such findings in his opinion, both at step two and elsewhere. (***See*** Tr. 19-23.)  In so doing, the ALJ essentially required plaintiff to present objective evidence "beyond the clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines." ***Johnson v. Astrue***, 2009 WL 2151381 at *3 (1st Cir. July 21, 2009) (citation and internal quotation marks omitted; alternation in original). This was improper.  Accordingly, the ALJ's conclusion that plaintiff's fibromyalgia is not a severe impairment is not supported by substantial evidence and cannot stand.

The Commissioner argues that any error in this regard is harmless.  I disagree.

Harmless error, although available in administrative appeals, is an "exceptional circumstance" that may be relied on only when it can be "confidently [said] that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." **Allen v. Barnhart**, 357 F.3d 1140, 1145 (10th Cir. 2004).[6]  As should be apparent from the foregoing discussion, that standard is not met in this case.

Although this error requires remand in its own right, it is not the only apparent error in the ALJ's decision.  The ALJ noted that he had received no or only minimal records from either Dr. Leppla, plaintiff's primary treating source, or her primary treating psychologist, Dr. Laurence Kerrigan.  (Tr. 22, 25.)  Even though plaintiff was represented by an attorney at the administrative level, the ALJ had an independent duty to fully develop the record in the case.  20 C.F.R. § 404.1512(e)(1); **Baca v. Department of Health and Human Services**, 5 F.3d 476, 479-80 (10th Cir. 1993).  That duty is triggered when the evidence is inadequate to allow the ALJ to make a fully informed decision.  **White v. Barnhart**, 287 F.3d 903, 908-09 (10th Cir. 2001).  Undoubtedly, the medical record in this case is voluminous, but the sheer size of the record itself is not determinative, especially when what is missing from the record are treating source records.

Without considering treating source records, it is impossible to say that the ALJ

---

[6]  Moreover, the case on which the Commissioner relies for his harmless error argument, **Carpenter v. Astrue**, 537 F.3d 1264 (10th Cir. 2008), states that any failure to consider the combined effect of all a plaintiff's impairments, both severe and non-severe, at step two is harmless if the ALJ subsequently proceeds to step three.  **Id.** at 1265-66.  That is not the type of error that occurred here, however.  This ALJ erred in finding plaintiff's fibromyalgia non-severe on the basis of factually erroneous and legally unsupportable arguments.

appropriately weighed and considered the competing medical opinions before him in determining plaintiff's residual functional capacity. Because the opinion of a treating source is generally entitled to controlling weight, *see* 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), the acknowledged absence of records from two key treating sources could very well have skewed the disability determination. Indeed, it appears to have done so in this case, as the ALJ rejected Dr. Leppla's opinion on the ground that it was not supported by objective evidence while simultaneously acknowledging that no treatment records had been provided. (Tr. 25.) It should be obvious that this reasoning is entirely circular and does not support the ALJ's conclusion rejecting Dr. Leppla's findings.[7]

Moreover, it appears to this court that the failure to request and consider the treating source records also infected the ALJ's credibility determination. Given his recitation of the evidence, it appears that the ALJ believed plaintiff to be either a

---

[7] The Commissioner argues that the failure to consider Dr. Leppla's functional capacity assessment is harmless because her opinion was drafted in 2007, after plaintiff's entitlement to disability benefits expired, and, thus, represents merely a retrospective diagnosis. This argument misses the mark on at least three fronts. First, although the opinion was authored after plaintiff's entitlement to benefits expired, medical evidence past the date last insured may be considered to the extent it sheds light on the nature and severity of plaintiff's condition during the relevant time period. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Second, although a retrospective *diagnosis* is insufficient to establish an entitlement to benefits, absent additional evidence of actual disability during the relevant time frame, *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991), Dr. Leppla's opinion is not a mere diagnosis, but an assessment of plaintiff's functional capacity. (To the extent it was not clear whether Dr. Leppla's opinion related to the relevant time period, it was the ALJ's responsibility to recontact her for clarification. *See* 20 C.F.R. § 416.927(c)(3); **Social Security Ruling 96-5p**, 1996 WL 374183 at *6 (SSA July 2, 1996.) Third, the ALJ did not reject Dr. Leppla's opinion on the basis that it was a retrospective diagnosis, and, thus, it would be improper to consider the Commissioner's *post hoc* rationale for the ALJ's decision. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

malingerer or a hypochondriac, or perhaps both.[8]  Certainly, there is evidence in the record to support that conclusion.  Nevertheless, plaintiff argues in her brief that her behavior was due to the effect of medications prescribed for her prior to her fibromyalgia diagnosis and contends that Dr. Leppla, who made the fibromyalgia diagnosis, will confirm this version of events.  It may be that Dr. Leppla's medical records, in fact, will provide substantiation. Without those records, however, the ALJ could not make a fully informed determination of plaintiff's credibility.  Thus, although "credibility determinations are peculiarly the province of the finder of fact," *White*, 287 F.3d at 908 (citation and internal quotation marks omitted), the ALJ's failure to secure the treating source records in this case leads to the conclusion that his credibility findings are not supported by substantial evidence.

For all these reasons, the decision of the ALJ must be reversed, and the case remanded to the Commissioner for further proceedings.[9]

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ, who is directed to

---

[8]  In addition, the ALJ's reliance on plaintiff's activities of daily living as undermining her credibility is suspect.  Such minimal activities as recounted by the ALJ do not necessarily translate well into a determination of what plaintiff can do on a sustained basis in the workplace. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  Moreover, the ALJ's recitation of plaintiff's activities do not fairly represent her statements on the issue.  For example, although the ALJ noted that plaintiff was able to do light housework (Tr. 25), plaintiff stated that she could vacuum only one or two times a month, do laundry two times a month, and sweep two to four times per month, and never for more than an hour at a time (Tr. 149).  In addition, the ALJ seems to have ignored that plaintiff has "bad days" and that overexertion often causes an exacerbation of her symptoms.  (*See* Tr. 150.)

[9]  I do not intimate by this ruling that plaintiff is or should be found disabled.

    a. Secure available medical records from plaintiff's treating sources, including, but not limited to, Dr. Leppla and Dr. Kerrigan;

    b. Recontact any treating or examining physicians for further clarification of their findings, seek the testimony of medical experts, order further consultative examinations, or otherwise further develop the record as he deems necessary;

    c. Reassess at step two of the sequential evaluation process whether plaintiff's fibromyalgia constitutes a severe impairment;

    d. If necessary, redetermine at step three of the sequential evaluation process whether that condition meets or equals in severity any impairment described in Appendix 1 of the Commissioner's regulations;

    e. If necessary, redetermine plaintiff's residual functional capacity at step four of the sequential evaluation process, articulating fully his findings in that regard and properly weighing the various medical opinions of record;

    f. If necessary, redetermine whether there are other jobs existing in significant numbers in the local and national economies that plaintiff can perform despite her limitations at step five of the sequential evaluation process; and

    g. Reassess the disability determination; and

3. That plaintiff is **AWARDED** her costs to be taxed by the Clerk of the Court pursuant to **FED.R.CIV.P**. 54(d)(1) and **D.C.COLO.LCivR** 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

Dated February 26, 2010, at Denver, Colorado.

**BY THE COURT:**

*[signature: Bob Blackburn]*
Robert E. Blackburn
United States District Judge